1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9   KAMALJIT SINGH GHAG,                    )   1:07-cv-00561-AWI-TAG HC
                                           )
10                  Petitioner,             )   FINDINGS AND RECOMMENDATIONS
                                           )   TO GRANT RESPONDENT'S MOTION
11      v.                                  )   TO DISMISS PETITION FOR WRIT OF
                                           )   HABEAS CORPUS AS MOOT (Doc. 5)
12   D. SMITH,                              )
                                           )   ORDER TO FILE OBJECTIONS WITHIN
13                  Respondent.             )   FIFTEEN DAYS
     _____ )

14
15
16          Petitioner is a federal prisoner proceeding with a petition for writ of habeas corpus  pursuant
17   to 28 U.S.C. § 2241.

### FACTUAL AND PROCEDURAL HISTORY

18          The instant petition was filed on April 11, 2007.  (Doc. 1).   The petition contends Petitioner
19   was convicted in the United States District Court for the Western District of Washington of one
20   count of violating 21 U.S.C. § 841(a)(1), conspiring to distribute ecstacy, and one count of violating
21   21 U.S.C. § 846, distributing ecstasy.  (Doc. 1, p. 6; Doc. 5, Exh. 1).   Petitioner was sentenced to a
22   prison term of twenty-four months.  (Id.).  The petition also asserts that Petitioner is now in the
23   custody of the Bureau of Prisons ("BOP") and that he is a first-time offender.  (Id.).
24          Petitioner notes that various federal courts, including this Court, have concluded that the
25   2002 and 2005 BOP regulations, by which the BOP has arbitrarily designated a maximum placement
26
27
28

1    time in Residential Re-Entry Centers ("RRC's")[1] equal to 10% of the prisoner's sentence, are illegal

2    and "inconsistent with clear congressional intent articulated in 18 U.S.C. §3621(b)." (Doc. 1, pp. 1,

3    5). Petitioner also contends that prison staff did not evaluate him for RRC placement upon his

4    arrival at the facility, that the BOP and prison staff have a duty to "consider every prisoner within

5    § 3621(b) to determine transfer to a [sic] available facility," but that "the unit-team has willfully

6    neglected and prejudice the Petitioner by not following the law that Congress has mandated for the

7    Bureau of Prisons." (Id. at p. 6). Petitioner seeks an order from this Court requiring Respondent

8    "to consider the appropriateness of transferring the Petitioner to an RRC in light of the factors set

9    forth in § 3621(b), not excluding any other factors deemed appropriate by the BOP." (Doc. 1, p. 7).

10    On June 6, 2007, Respondent filed the instant motion to dismiss, alleging that Respondent

11    had conducted an evaluation of Petitioner's release date to RRC, without reference to the challenged

12    regulations, that the relief Petitioner had requested had been afforded to him, and therefore the

13    petition was now moot. (Doc. 5, pp. 2-3). Respondent states, "The BOP has evaluated petitioner

14    'without reference to the time constraints imposed by 28 CFR § 570.20-21 or the 2002 and 2005

15    Community Corrections Policies.'" (Id. at p. 2). As a result of this evaluation, the BOP determined

16    Petitioner is to spend "45-60 days in a Residential Re-entry Center before his release." (Id.) In the

17    motion to dismiss, Respondent has provided a copy of the completed form entitled, "Institutional

18    Referral for CCC Placement." (Doc. 5, Exh. 3, p. 2). The form indicates that the assessment was

19    conducted on May 17, 2007. (Id.).

20    On July 10, 2007, Petitioner filed an opposition to the motion to dismiss, contending that the

21    BOP's Program Statement 7310.04 ("Program Statement"), which provides for an RRC placement

22    assessment at least eleven to thirteen months before the prisoner's date of release, constitutes a "de

23    facto scheme" to circumvent the court decisions that have invalidated the 2002 and 2005 BOP

24    regulations. (Doc. 7, p. 2). Petitioner contends that, although the "new scheme" has "confused" the

25    courts into thinking that the BOP is in compliance with the case law on this issue, in fact the "BOP

26

27    [1]Previously, RRC's were referred to as Community Correctional Centers, or CCC's. Documents

28    in this case filed prior to the change in terminology refer to such placements as CCC's. However, for consistency, the Court will refer to them as RRC's.

1   limits, never assesses an inmate's needs, never conduct's an interview with an inmate to see if he/she

2   qualifies for RRC placement, or by the attached 'Sentence Monitoring Computation Data' the BOP

3   has already pre-determined by a computer with all the calculations in place to limit an inmate to 10%

4   up to six months of a prisoners total sentence, the sentence computation data is available

5   immediately after an arrival or a surrender of any inmate." (Id. at p. 2).  Petitioner contends that the

6   Program Statement is "arbitrary, capricious, or otherwise an abuse of discretion," and he asks the

7   Court to disregard the Program Statement and to order the BOP to consider the immediate transfer of

8   Petitioner to an RRC using the correct criteria.  (Id. at p. 4).

9                                    **JURISDICTION**

10          Writ of habeas corpus relief extends to a person in custody under the authority of the United

11   States.  See 28 U.S.C. § 2241.  While a federal prisoner who wishes to challenge the validity or

12   constitutionality of his conviction must bring a petition for writ of habeas corpus under 28 U.S.C.

13   § 2255, a petitioner challenging the manner, location, or conditions of that sentence's execution must

14   bring a petition for writ of habeas corpus under 28 U.S.C. § 2241.  See, e.g., Capaldi v. Pontesso,

15   135 F.3d 1122, 1123 (6th Cir. 1998);  Kingsley v. Bureau of Prisons, 937 F.2d 26, 30 n.5 (2nd Cir.

16   1991); United States v. Jalili, 925 F.2d 889, 893-894 (6th Cir. 1991); Brown v. United States,

17   610 F.2d 672, 677 (9th Cir. 1980).  To receive relief under 28 U.S.C. § 2241 a petitioner in federal

18   custody must show that his sentence is being executed in an illegal, but not necessarily

19   unconstitutional, manner.  See, e.g., Clark v. Floyd, 80 F.3d 371, 372, 374 (9th Cir. 1995)

20   (contending time spent in state custody should be credited toward federal custody);  Jalili, 925 F.2d

21   at 893-894 (asserting petitioner should be housed at a community treatment center);  Barden v.

22   Keohane, 921 F.2d 476, 479 (3rd Cir. 1990) (arguing Bureau of Prisons erred in determining whether

23   petitioner could receive credit for time spent in state custody);  Brown, 610 F.2d at 677 (challenging

24   content of inaccurate pre-sentence report used to deny parole).  A petitioner filing a petition for writ

25   of habeas corpus under 28 U.S.C. § 2241 must file the petition in the judicial district of the

26   petitioner's custodian.  Brown, 610 F.2d at 677.

27          In this case, Petitioner alleges that BOP's failure to conduct an immediate, proper RRC

28   placement assessment for Petitioner violates the federal courts' interpretation of the 2002 and 2005

1  regulations and the BOP's exercise of discretion under § 3621(b).  Petitioner is therefore challenging

2  the legality of the manner in which his sentence is being executed.  Thus, his petition is proper under

3  28 U.S.C. § 2241.  In addition, because Petitioner is incarcerated at the Federal Prison Camp,

4  Atwater, California, which is within the Eastern District of California, Fresno Division, this Court

5  has jurisdiction to proceed to the merits of the petition.

6  **EXHAUSTION**

7   A preliminary question is whether petitioner has exhausted available administrative remedies.

8  Before filing a petition for writ of habeas corpus, a federal prisoner challenging any circumstance of

9  imprisonment must first exhaust all administrative remedies.  Western Radio Services Co. v. Espy,

10  79 F.3d 896, 899 (9th Cir. 1996); Martinez v. Roberts, 804 F.3d 570, 571 (9th Cir. 1986); Chua Han

11  Mow v. United States, 730 F.2d 1308, 1313 (9th Cir. 1984); Ruwiwat v. Smith, 701 F.2d 844, 845

12  (9th Cir. 1983).

13   The exhaustion prerequisite for filing a § 2241 petition is judicially created; it is not a

14  statutory requirement.  Brown v. Rison, 895 F.2d 533, 535 (9th Cir. 1990), overruled on other

15  grounds, Reno v. Koray, 515 U.S. 50, 54-55 (1995).  Thus, "[b]ecause exhaustion is not required by

16  statute, it is not jurisdictional."  Brown, 895 F.2d at 535.  If a petitioner has not properly exhausted

17  his claims, the district court, in its discretion, may either "excuse the faulty exhaustion and reach the

18  merits,  or require the petitioner to exhaust his administrative remedies before proceeding in court."

19  Id.; McCarthy v. Madigan, 503 U.S. 140, 144-145 (1992), superceded on other grounds, 42 U.S.C.

20  §1997(e).

21   One of the purposes of administrative exhaustion is to allow the agency an opportunity to

22  remedy its own mistakes before being haled into court, and this applies with particular force when

23  the challenged action involves an exercise of the agency's discretionary power.  See McCarthy v.

24  Madigan, 503 U.S. at 145.  Thus, exhaustion of administrative remedies would be futile and should

25  be excused if the agency lacks authority to grant the requested relief or has predetermined the issued

26  before it.  See id. at 148.

27   Here, Petitioner has not indicated that he has undertaken any efforts to exhaust his

28  administrative remedies, but does contend that exhaustion would be futile. (Doc. 1, p. 2).

1   Respondent has not addressed the issue.  As mentioned, however, futility is an exception to the

2   exhaustion requirement.  Laing v. Ashcroft, 370 F.3d 994, 1000-1001 (9th Cir. 2004).  In the instant

3   action, it is apparent that it would be futile for Petitioner to exhaust his administrative remedies

4   because he alleges he is being denied an immediate RRC placement based on formally-adopted BOP

5   regulations, the validity of which BOP strenuously maintains.  In the Court's view, therefore,

6   Petitioner's exhaustion of his administrative remedies is not a pre-requisite to the district court's

7   jurisdiction over the case because of the BOP's intractable and immutable policy against the relief

8   sought.

9   **DISCUSSION**

10       The case or controversy requirement of Article III of the Constitution deprives the Court of

11   jurisdiction to hear moot cases.  Iron Arrow Honor Soc'y v. Heckler, 464 U.S. 67, 70 (1983);

12   N.A.A.C.P., Western Region v. City of Richmond, 743 F.2d 1346, 1352 (9th Cir. 1984).

13   A case becomes moot if the "the issues presented are no longer 'live' or the parties lack a legally

14   cognizable interest in the outcome."  Murphy v. Hunt, 455 U.S. 478, 481 (1982).  The federal courts

15   are  "without power to decide questions that cannot affect the rights of the litigants before them."

16   North Carolina v. Rice, 404 U.S. 244, 246 (1971).

17       Here, the instant petition requested an order from this Court directed to the BOP requiring it

18   to conduct an immediate assessment based upon the criteria in 18 U.S.C. § 3621(b), without

19   reference to BOP policy promulgated in December 2002 and in 2005 and to immediately place

20   Petitioner in an RRC.  (Doc. 1).  Respondent has indicated that the BOP has performed the

21   requested assessment for RRC placement without regard to the discredited regulations.  Thus, to the

22   extent that the petition requested such an assessment, the petition is now moot, since the Court

23   cannot order further relief in this regard.

24       However, Petitioner also requested an immediate placement in an RRC.  The Court

25   concludes that there is no legal basis for such a claim.  Petitioner's claim that the Program Statement

26   is derivative of the discredited regulations is misguided.  Nothing in the Program Statement prevents

27   the BOP, in the exercise of its statutory discretion, from making an earlier determination, although

28   the Court is not aware of any statute or regulation that requires such expedited action by the BOP.

1  In other words, the Program Statement simply insures that inmates will receive an RRC assessment

2  sufficiently in advance of their release date to permit them to make appropriate plans prior to their

3  transfer.  Because the Program Statement does not limit or otherwise intrude on the BOP's exercise

4  of discretion in making its RRC assessment, the Program Statement, contrary to Petitioner's

5  assertions, is not in any way analogous to the 2002 and 2005 regulations that many courts, including

6  this one, have found to be an illegal limitation on the discretion vested in the BOP by § 3621(b).

7      Also, any habeas challenge based on the BOP's implementation of  Program Statement

8  7310.04 must fail.  Even if Petitioner is correct that the Program Statement is being unlawfully

9  implemented, the violation of a BOP Program Statement is not a violation of federal law.  Program

10 Statements are "internal agency guidelines" that are not "subject to the rigors of the Administrative

11 Procedure Act, including public notice and comment." Jacks v. Crabtree, 114 F.3d 983, 985 n. 1 (9th

12 Cir.1997).  BOP Program Statements are simply interpretive rules.  Reno v. Koray, 515 U.S. 50, 61

13 (1995).  "[T]he internal guidelines of a federal agency, that are not mandated by statute or the

14 constitution, do not confer substantive rights on any party." United States v. Craveiro, 907 F.2d 260,

15 264 (1st Cir 1990); see also, e.g., Schweiker v. Hansen, 450 U.S. 785, 789 (1981) (Social Security

16 Administration Manual was only regulation, had no legal force, and did not bind government);

17 United States v. Busher, 817 F.2d 1409, 1411 (9th Cir.1987) (United States Attorneys' internal

18 guidelines do not create any rights enforceable at law); Thompson v. United States, 592 F.2d 1104,

19 1110 (9th Cir.1979) (government safety manual or safety programs do not grant right to have them

20 followed); United States v. Caceres, 440 U.S. 741 (1979) (failure to follow internal IRS regulations

21 did not violate federal law).

22     Program Statement 7310.04 thus only provides guidelines to use when establishing the

23 schedule for making a determination regarding an inmate's transfer to an RRC facility.  The

24 guidelines it establishes do not carry the force and effect of law.  As such, any violation of this

25 Program Statement does not violate federal law.  Because Petitioner has not alleged a violation of

26 federal law with regard to the BOP's implementation of the challenged Program Statement,

27 Petitioner is not entitled to habeas corpus relief on that ground.

28 ///

1    However, and in any event, the BOP has *already* undertaken the requested assessment

2  pursuant to the Program Statement.  The only import of the Program Statement is to suggest a time

3  frame within which an assessment must be conducted.  Since the assessment is now a *fait accompli*,

4  Petitioner's after-the-fact challenge of the Program Statement has no legal bearing on the issues in

5  this case.

6    Moreover, the Court is unaware of any authority requiring the BOP to conduct its RRC

7  eligibility reviews or immediately transfer a prisoner to an RRC facility *on demand of the prisoner* or

8  at the time of the prisoner's arrival at the facility.  Indeed, while case law from this Court strongly

9  suggests that Petitioner is entitled to an RRC assessment made independently of the 2002 and 2005

10  regulations, Petitioner cites no authority for the proposition that he has either a statutory or

11  constitutional right to an immediate assessment or transfer.

12    Additionally, for good reason, the Court is reticent to micro-manage the BOP regarding

13  inmate RRC assessments and placements.  "[F]ederal courts ought to afford appropriate deference

14  and flexibility to state officials trying to manage a volatile environment....Such flexibility is

15  especially warranted in the fine-tuning of the ordinary incidents of prison life...."  Sandin v. Conner,

16  515 U.S. 472, 482 (1995).  In Procunier v. Martinez, 416 U.S. 396, 404-405 (1974), overruled in part

17  on other grounds, Thornburgh v. Abbott, 490 U.S. 401 (1989), the Supreme Court explained the

18  basis for this deference:

19    Traditionally, federal courts have adopted a broad hands-off attitude toward
      problems of prison administration.  In part this policy is the product of various
20    limitations on the scope of federal review of conditions in state penal institutions.
      More fundamentally, this attitude springs from complementary perceptions about
21    the nature of the problems and the efficacy of judicial intervention.  Prison
      administrators are responsible for maintaining internal order and discipline, for
22    securing their institutions against unauthorized access or escape, and for
      rehabilitating, to the extent that human nature and inadequate resources allow, the
23    inmates placed in their custody. The Herculean obstacles to effective discharge of
      these duties are too apparent to warrant explication.  Suffice it to say that the
24    problems of prisons in America are complex and intractable, and, more to the point,
      they are not readily susceptible of resolution by decree.  Most require expertise,
25    comprehensive planning, and the commitment of resources, all of which are
      peculiarly within the province of the legislative and executive branches of
26    government.  For all of those reasons, courts are ill equipped to deal with the
      increasingly urgent problems of prison administration and reform.  Judicial
27    recognition of that fact reflects no more than a healthy sense of realism.

28  Procunier, 416 U.S. at 404-405.

Although it is entirely understandable that Petitioner would desire to be immediately transferred to an RRC rather than at some date in the future, Petitioner has given the Court no reason to doubt the bona fides of the BOP's RRC assessment of Petitioner.  Since such an assessment is all Petitioner was entitled to in this habeas proceeding, and since he has now received what he was entitled to, the Petition is moot.

## RECOMMENDATIONS

Accordingly, the Court RECOMMENDS as follows:

1. Respondent's Motion to Dismiss (Doc. 5), be GRANTED;

2. The Petition for Writ of Habeas Corpus (Doc. 1), be DISMISSED as MOOT;

3. The Clerk of Court be DIRECTED to enter judgment.

These Findings and Recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within fifteen (15) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within fifteen (15) days after filing of the objections.  The District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Judge's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

Dated:   **August 17, 2007**                                          **/s/ Theresa A. Goldner**
                                                                     UNITED STATES MAGISTRATE JUDGE